UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DALE EMERY,

    Plaintiff,

v.

BIOPORT CORPORATION,

    Defendant.

No. 06-CV-0008-AAM

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S ALTERNATIVE MOTION TO TRANSFER VENUE**

**BEFORE THE COURT** is Defendant BioPort Corporation's Motion to Dismiss for Lack of Jurisdiction or, in the alternative, Transfer Venue (Ct. Rec. 19). This matter has come on for hearing without oral argument. After reviewing all materials submitted by the parties and relied upon for authority, the Court is fully informed and hereby grants Defendant's motion and dismisses Plaintiff's complaint for lack of personal jurisdiction for the reasons discussed below.

**I.  BACKGROUND**

Plaintiff, Dale Emery, is a resident of Washington. Emery's Complaint filed January 9, 2006, alleges personal injury due to his inoculation with anthrax vaccine while working as a merchant seaman aboard a ship under contract with the U.S. Navy. Complaint, Ct. Rec. 1. Plaintiff alleges he received the injection from a doctor with the United States Department of Defense when Plaintiff was located near Beaumont, Texas. *Id.* Defendant, BioPort Corporation (Bioport) is a Michigan corporation and

ORDER - 1

is the sole manufacturer, designer, distributor, producer and seller of Anthrax Vaccine Adsorbed ("AVA"). Defendant has moved to dismiss for lack of jurisdiction or, in the alternative, to transfer venue to Michigan. The following are the undisputed jurisdictional facts relevant to the motion.

Since March 2000, BioPort's sole business (with the exception of certain research and development activities) has been the manufacture and sale of AVA. BioPort's principal place of business is Lansing, Michigan, where it produces all AVA. BioPort's records and witnesses relating to production and testing of AVA are located in Michigan. BioPort has never maintained an office, employee, telephone, mailing address, or registered agent for service of process in Washington. BioPort does not own or lease any real property in Washington. BioPort is not registered to do business in Washington.

*Relationship with Hollister-Stier*

Since 2002, Bioport has shipped all of its AVA to Hollister-Stier of Spokane, Washington to have them "fill" AVA into ten-dose vials. Hollister-Stier then returns the vials to BioPort in Michigan. During filling, BioPort owns the AVA possessed by Hollister-Stier. BioPort's contract with Hollister-Stier describes the relationship of the parties as "independent contractors," rather than as a "joint venture." Zingone Dec., Exs A, B. BioPort internal documents refer to Hollister-Stier as a "vendor." BioPort employees have had various contacts with Hollister-Stier over the years. They visit Hollister-Stier annually to conduct quality insurance audits, which usually last one or two days. BioPort has sent employees to observe fills, to help Hollister-Stier prepare for a pre-approval inspection by the Food and Drug Administration, to discuss contract terms, and for "meet and greet" tours. Howell Declaration, Ct. Rec. 45 at 9-14. BioPort maintains a "day to day" relationship with Hollister-Stier. *Id.*

//
//

ORDER - 2

*Sales and Shipments*

All but a small fraction of AVA has been sold to the United States Government, Department of Defense (DoD). Wibert Dec ¶6. The government mandates when and where the AVA that it has purchased will be delivered. BioPort plays no part in that decision-making process. BioPort stores the DoD-owned AVA pursuant to a separate storage contract. At the direction of the DoD, since 1998, BioPort has made shipments of 270,000 doses of AVA to entities in Washington State. The majority of shipments were to military facilities. All AVA shipped to Washington State pursuant to this contract was DoD-owned and delivered at DoD's request.

BioPort has made no direct sales of AVA to a Washington customer, although recently BioPort has taken steps to begin marketing AVA to state and local governments. Several meetings took place with various employees of the City of Seattle in 2006 to gauge interest in such a program. BioPort has not yet made any such sales.

*Business Relationships*

BioPort has entered into licensing agreements with Microsoft Corporation. BioPort also entered into two contracts with CFO Services for the set up of a "financial data mart." The maximum amount paid under each contract was $3900.00. A third contract was entered into with Kuhlman Technologies for technical and operational evaluation of a piece of equipment. None of these contracts involved the physical presence of BioPort in Washington.

## II.  DISCUSSION

Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Plaintiff cannot simply rest on the bare allegations of its complaint, but rather

is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Where, as here, the motion is based on written materials rather than on evidence developed through an in-court hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger*, 374 F.3d at 800. Uncontroverted factual allegations must be taken as true. Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.* A prima facie showing means that the plaintiff has produced admissible evidence, which if believed, is sufficient to establish the existence of personal jurisdiction. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

Where no applicable federal statute addresses the issue, a court's personal jurisdiction analysis begins with the "long-arm" statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute provides that a person submits himself/herself to jurisdiction in Washington as a result of: (a) the transaction of any business within the state or, (b) the commission of a tortious act within the state. RCW 4.28.185(1)(a) & (b); *Shaffer v. McFadden*, 125 Wn.App. 364, 370, 104 P.3d 742,745 (2005). Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits. *Byron Nelson Co. v. Orchard Management Corp.*, 95 Wn.App. 462, 465, 975 P.2d 555 (1999). Because Washington's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analysis under state law and federal due process is the same. *Schwarzenegger*, 374 F.3d at 800-01. A court can exercise its power over a non-resident defendant (absent the defendant's consent) only if it has specific or general jurisdiction. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

//
//

**A. Specific Jurisdiction**

Specific jurisdiction applies if (1) the defendant has performed some act or consummated some transaction within the forum state or otherwise "purposefully availed" himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Easter v. American West Financial*, 381 F.3d 948, 960-61 (9th Cir. 2004). Plaintiff fails to satisfy the second prong of this test. Plaintiff's injuries arise from his inoculation with AVA in Texas. There is no contention the AVA was manufactured in Washington. Plaintiff's failure to discuss specific jurisdiction in his supplemental opposition brief also suggests the Plaintiff has abandoned this argument.

**B. General Jurisdiction**

In order for a court to exercise general jurisdiction over a nonresident defendant, the plaintiff must demonstrate that the defendant's contacts with the forum state are "substantial" or "continuous and systematic." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868 (1984). "[I]n a controversy unrelated to a defendant's contacts with the forum, a court may exercise general jurisdiction only where 'continuous corporate operations within a state are thought so substantial and of such a nature as to justify suit against the defendant on causes of action arising from dealings entirely distinct from those activities.'" *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir.2006) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 318, 66 S.Ct. 154 (1945)). "The standard for establishing general jurisdiction is 'fairly high,' and requires that the defendant's contacts be of the sort that approximate physical presence." *Bancroft,* 223 F.3d at 1086. "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Id.*

Here, Bioport's contacts with the State of Washington do not "approximate physical presence." BioPort is a Michigan corporation with no permanent physical presence in Washington. BioPort has not established a regular place of doing business in Washington. It is not registered as a Washington business, it does not maintain a Washington office, and it has not sold AVA to any Washington consumers. Because BioPort is not incorporated in Washington, is not licensed or authorized to do business there, does not have offices, property, or employees there, and does not pay taxes, advertise, or make sales in Washington, BioPort's contacts with Washington are not sufficiently "continuous and systematic" to support general jurisdiction. *See Helicopteros*, 466 U.S. at 416; *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th Cir. 1995)(lack of a regular place of business in forum state is significant and is not overcome by a few visits to the forum).

While the absence of these general business contacts has the most bearing on this decision, the Court recognizes that the minimum contacts analysis entails more than a mechanical application of these jurisdictional factors alone. The Court must balance the totality of the contacts and also other indicia of presence, including "longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." *Tuazon,* 433 F.3d at 1172. The Court has specifically considered the nature and extent of BioPort's contractual relations with Washington entities, including Microsoft Corporation, CFO Services, Kuhlman Technologies, and Hollister-Stier. The fact that BioPort has entered into agreements with resident third parties does not by itself give rise to general jurisdiction. The Ninth Circuit has made a point of differentiating between doing business in the forum and doing business *with* the forum state; the latter generally does not give rise to general jurisdiction "because engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." *Bancroft*, 223 F.3d at 1086 (concluding that defendant's license agreements with two television networks and a handful of California vendors constituted doing

business with California and not in California). Therefore, doing business "with" Washington, even if done systematically and continuously, is not sufficient to confer general jurisdiction.

Taken together, BioPort's agreements with these Washington entities constitutes doing business *with* Washington entities rather than doing business *in* Washington. Only BioPort's contract with Hollister-Stier for the filling of vials involves any significant contact with this forum beyond the mere fact of contracting. Notably, the Court recognizes BioPort has continuously shipped *all* of its AVA into Washington pursuant to this contract. The purpose of BioPort's contract with Hollister-Stier was for services to be performed by Hollister-Stier in Washington. Moreover, the record evidences BioPort's supervision of Hollister-Stier's performance and at least annual visits to Washington by BioPort employees. BioPort's relationship with Hollister-Stier is a substantial business contract which contemplates a manufacturing component based in Washington.

While the nature of BioPort's ongoing commercial contact with Hollister-Stier demonstrates a kind of 'purposeful availment,' *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77, 105 S.Ct. 2174, 2184 (1985), similar to that necessary for the exercise of limited or specific jurisdiction[1], it is not enough to establish general jurisdiction. Commercial contact absent other indicia of corporate presence is typically not sufficient to establish general jurisdiction. *See Helicopteros Nacionales de*

---

[1] *See Watlow Elec. Mfg. Co. v. Patch Rubber Co.*, 838 F.2d 999 (8th Cir.1988)(specific jurisdiction was proper where a corporation sent materials into the state for manufacture); *In- Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 227 (6th Cir. 1972) ("Van Dusen entered into contract negotiations involving a substantial order for the manufacture of goods with a firm which it necessarily knew was based in Ohio and had its production facilities located within that State. That the making (and breaking) of a contract with the Plaintiff would have substantial consequences in the State of Ohio is a reality of which Defendant could not have been ignorant").

ORDER - 7

1  *Colombia, S.A. v. Hall*, cited *supra* (no general jurisdiction where Colombian corporation repeatedly purchased helicopter parts in Texas and sent employees there for training, but did not have offices, agents, employees or a license to do business there). Similarly, the fact that BioPort sends employees for visits to Washington, even if occurring on regular intervals, does not warrant the inference that BioPort is "present" in Washington. *Helicopteros*, 466 U.S. at 417. The commercial contacts in the present case tie BioPort to Hollister-Stier, but not to the State of Washington.

The Court has also considered the fact that BioPort's agreement with Hollister-Stier contemplates BioPort's shipment of bulk quantities of AVA into Washington. In addition, pursuant to its contract with the DoD, BioPort has shipped 270,000 DoD-owned doses of AVA into Washington at the instigation of the DoD. It is significant that these shipments were made pursuant to BioPort's contractual obligations with third parties and not as a result of solicitation of sales in Washington. *C.f. Paradise Motors, Inc. v. Toyota De Puerto Rico Corp.*, 314 F.Supp.2d 495 (D.V.I. 2004) (Japanese automobile manufacturer was subject to general personal jurisdiction even though manufacturer did not have business license, where manufacturer shipped vehicles purchased by regional subsidiary directly to dealership for over 25 years, shipped product literature written in English because regional subsidiary only offered such literature in Spanish, sent sales representatives to Virgin Islands to visit dealership's business to ensure that vehicles were not being shipped to United States for resale in violation of territorial sales agreements, and received profit share of $2 million average annual sales of its vehicles in Virgin Islands). While BioPort's shipment of products to Washington occurs with some frequency, this activity is qualitatively equivalent to doing business *with* Washington. It is not sufficiently substantial in nature so as to equate to corporate presence *in* Washington.[2] Again,

---

[2] Plaintiff argues BioPort should expect to be haled into Washington courts because it transports dangerous material using Washington roadways for handling

BioPort's shipment of AVA into Washington has nothing to do with the injuries alleged in this case. BioPort's contacts with Washington are not so substantial as to justify suit in Washington against BioPort on a cause of action arising from dealings entirely distinct from these contacts.

General jurisdiction only exists when a "defendant's contacts be of the sort that approximate physical presence." *Bancroft,* 223 F.3d at 1086. The level of contact required to establish general jurisdiction is high; the Ninth Circuit has declined to find general jurisdiction even when the defendant's contacts with the forum were "quite extensive." *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 851 n.3. (9th Cir. 1993)(citing cases). The Court finds the various contacts here, collectively[3], do not rise to this standard. While it is perhaps true BioPort has "stepped through the door, there is no indication that it has sat down and made itself at home." *Glencore*, 284 F.3d at 1125 (holding that there was no general jurisdiction where a defendant's only contacts with California amounted to sixteen shipments of rice sold through an independently employed sales agent).

**C. Dismissal or Transfer**

The issue that remains is whether to dismiss the case or transfer it to a judicial

---

by Washington residents working for Hollister-Stier. Supplemental Opposition, Ct. Rec. 44 at 8. There is no evidence in the record regarding the hazards posed by the shipment or handling of AVA. In any case, while the hazardous nature of a product might be a factor considered in the evaluation of the reasonableness of the exercise of specific jurisdiction, it does not seem relevant to the assessment of whether BioPort's corporate contacts satisfy the "continuous and systematic" standard for general jurisdiction.

[3] The Court has also considered BioPort's limited contact with the City of Seattle for the purpose of gauging the city's interest in AVA. This falls far short of the level of "continuous and systematic" activity necessary to establish general jurisdiction.

ORDER - 9

district that would have personal jurisdiction over the parties. 28 U.S.C. § 1631 (upon finding jurisdiction is lacking, the district court "shall, if it is in the interest of justice, transfer [the action] to any other such court in which the action . . . could have been brought at the time it was filed"). BioPort has alternatively requested this case be transferred to the Western District of Michigan. Oftentimes, a plaintiff makes a motion to transfer as an alternative to complete dismissal if the court fails to find jurisdiction over the defendant. In this case, however, the Plaintiff opposes transfer and would prefer dismissal of the case.[4] Supplemental Opposition Memo., Ct. Rec. 44 at 10. As such, there is no purpose in forcing the Plaintiff to litigate its claim in another court. The Court will honor Plaintiff's choice and dismiss the case.

## IV. CONCLUSION

BioPort lacks sufficiently substantial, continuous and systematic contacts with this forum so as to create a basis for general jurisdiction over it. Accordingly, the

//
//
//
//
//
//
//

---

[4] The Court notes that Plaintiff's initial memorandum opposed the request for transfer to Michigan and instead requested the Court transfer the action to "another district," but did not identify which district that should be. Plaintiff also noted a concern with the statute of limitations. However, in Plaintiff's most recent filing, he indicates he would prefer a dismissal so that he may seek review through an appeal. Supplemental Opposition Memo., Ct. Rec. 44 at 10. The Court assumes this is the Plaintiff's current position.

ORDER - 10

Court **GRANTS** BioPort's Motion to Dismiss for Lack of Personal Jurisdiction (Ct. Rec. 19). BioPort's alternative Motion to Transfer Venue (Ct. Rec. 19) is **DENIED**. Plaintiff's complaint is **DISMISSED without prejudice**.

    **IT IS SO ORDERED.** The Clerk of the Court is directed to enter Judgment in favor of BioPort, forward copies of this Order to counsel for the parties, and **CLOSE** the file.

    DATED this 31st day of October, 2006.

    s/ Alan A. McDonald
    ALAN A. McDONALD
    SENIOR UNITED STATES DISTRICT JUDGE